Filed 7/1/24  Alvidrez v. Castillo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| ALICE ALVIDREZ, | |
| Plaintiff and Appellant, | G062421 |
| v. | (Super. Ct. No. 30-2019-01105688) |
| MEREDITH ANNE CASTILLO, | O P I N I O N |
| Defendant and Respondent. | |


Appeal from a judgment of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

Law Offices of Richard A. Jones, Richard A. Jones, Jarrick S. Goldhamer; and Kristen Martin for Plaintiff and Appellant.

Roy L. Comer; SKB Law and Susan Knock Beck for Defendant and Respondent.

\*          \*          \*

INTRODUCTION

In March 1994, Lamberto Castillo shot and killed Kenny Sommer and Chen Blanchard in downtown Huntington Beach. Lamberto was not arrested and charged until April 2017 and, in November 2019 he pleaded guilty to two counts of voluntary manslaughter.

In 2019, Sommer's mother, plaintiff Alice Alvidrez, sued Lamberto Castillo and his wife Meredith Castillo under several theories for the wrongful death of Sommer.[1] Alvidrez alleged that Meredith had a duty to protect Sommer by virtue of her ability to control Lamberto and had aided and abetted, and conspired with, Lamberto to kill Sommer.

The trial court granted Meredith's motion for summary judgment on the grounds of lack of evidence sufficient to establish a duty of care and to support allegations that Meredith had aided and abetted and conspired with Lamberto. We affirm the judgment but on a different ground raised by Meredith's motion for summary judgment: We conclude the undisputed facts establish the claims against Meredith are time-barred under Code of Civil Procedure section 335.1.

FACTS

On March 31, 1994, as Lamberto and Meredith were walking through downtown Huntington Beach, they saw two men (Sommer and Blanchard) openly urinating in the street. Lamberto verbally confronted Sommer and Blanchard. Meredith said nothing to either man. Either Sommer or Blanchard pushed Lamberto. Meredith had no physical contact

---

[1] For convenience, we refer to Lamberto Castillo as Lamberto and Meredith Castillo as Meredith.

with Sommer or Chen. Meredith led Lamberto away from the encounter, and they walked directly home.

Once home, Lamberto took a gun, which he owned but was registered under Meredith's maiden name, and some ammunition. Meredith did not retrieve the gun or the ammunition for Lamberto. He then drove himself back to where he had seen Sommer and Blanchard, parked, walked a short distance, and shot and killed both Sommer and Blanchard. Lamberto immediately drove home. Only Meredith was home when he arrived.

About four days after killing Sommer and Blanchard, Lamberto got rid of the gun by placing it in a dumpster behind a store in Costa Mesa or Santa Ana.

After killing Sommer and Blanchard, Lamberto changed his appearance by cutting his hair, shaving his face, and periodically thereafter continued to change his appearance. Lamberto and Meredith lived in their home in Huntington Beach until 1997, and Lamberto continued to work as a teacher at a local public school until 1999. Lamberto and Meredith moved to Colorado sometime between 2004 and 2007.

In April 2017, Lamberto was arrested and charged in the murders of Sommer and Blanchard. In November 2018, Lamberto pleaded guilty to two counts of voluntary manslaughter with enhancements for use of a firearm. He was sentenced to 19 years 4 months in prison. Although Lamberto pleaded guilty to voluntary manslaughter, the factual basis offered for his plea was: "[O]n 3/31/94, I unlawfully and *with malice aforethought* killed Kenny Sommer and Chen Cosmo Maui Blanchard, human beings. I committed these killings with a firearm." (Italics added.)

PROCEDURAL HISTORY

Alvidrez initiated this lawsuit in October 2019 by filing a complaint asserting a negligence cause of action against Meredith and an intentional tort cause of action against Lamberto. The operative complaint is the second amended complaint, filed in May 2022, which asserted a general negligence cause of action against Meredith and an intentional tort cause of action against both Meredith and Lamberto.

As to the events on March 31, 1994, Alvidrez alleged Meredith was negligent in failing to prevent Lamberto from killing Sommer for these reasons: (1) Meredith knew or should have known of Lamberto's "aggressive nature, poor decision-making, and the dangerous consequences of his decisions," which "involved public confrontations and disputes"; (2) despite knowledge of Lamberto's "aggressive nature and prior criminal actions," Meredith purchased a handgun, registered it in her own name, and "negligently entrusted" the handgun to Lamberto; (3) although Meredith knew how to secure the handgun and make it inaccessible to Lamberto, she failed to safely and lawfully secure the handgun; (4) Meredith knew how to steer Lamberto away "from pursuing his dangerous activities and had successfully intervened in the prior altercation"; (5) Meredith "facilitate[d] and tacitly encourage[d Lamberto] to proceed with his known and obvious murderous intentions"; (6) Meredith was present when Lamberto retrieved her handgun and "negligently and carelessly" failed to take any action to prevent Lamberto from taking it, even though she knew he intended to use it to kill Sommer and Blanchard; and (7) Meredith knew or should have known that Lamberto left their home with her handgun with the intent to kill Sommer and Blanchard.

The second amended complaint alleged that Meredith was liable for intentional tort under the theory that she aided and conspired with Lamberto to kill Sommer and Blanchard. The complaint alleged that in furtherance of the conspiracy, or to aid and abet Lamberto, Meredith helped him change his appearance to avoid detection, "hid her knowledge of the crime and involvement in procurement of the handgun used in the crime," and failed to report the handgun as lost or missing.

In September 2022, Meredith filed a motion for summary judgment or, in the alternative, for summary adjudication. The motion for summary judgment raised five issues.[2] Meredith's separate statement of undisputed facts (separate statement) was based on 13 undisputed material facts divided among those five issues. The motion for summary judgment, broadly speaking, asserted judgment in Meredith's favor was warranted because (1) Alvidrez's insufficient discovery responses showed that she did not have evidence to support her claims, (2) the evidence submitted by Meredith negated elements of the negligence and intentional tort causes of action, and (3) the complaint was time-barred as a matter of law under Code of Civil Procedure section 335.1.

---

[2] The five issues were: (1) "As to the first cause of action for general negligence, Meredith Castillo owed no duty to control her husband or to protect his victims"; (2) "There is no merit to the claim against Meredith Castillo for damages for negligent entrustment of the gun"; (3) "There is no merit to the claim against Meredith Castillo for damages for not reporting the disposition of the gun"; (4) There is no merit to the claim against Meredith Castillo for damages for intentional tort; (5) "Neither cause of action against Meredith Castillo has merit because [Code of Civil Procedure section] 335.1 bars it and Meredith did not actively conceal her identity or that of her husband."

5

In opposition to the motion for summary judgment, Alvidrez argued the motion was "procedurally deficient," Meredith had failed to support her contentions with reasoned arguments and citation to authority, and the evidence submitted by Meredith was deficient and failed to show that she was entitled to summary judgment as a matter of law.

In January 2023, the trial court granted the motion for summary judgment. As to the negligence cause of action, the court found that Meredith had "met her burden to show a lack of evidence sufficient to establish a cognizable duty of care which would extend from Meredith to [Alvidrez's] son, as she has presented evidence to show that she had no prior knowledge of and played no part in the criminal acts committed by Lamberto." The burden shifted to Alvidrez, and the court found she had failed to meet her burden to show a triable issue existed and had presented no evidence of any circumstance that would render Meredith liable for negligence.

The trial court found that Meredith had met her burden to show lack of evidence sufficient to support the intentional tort cause of action, the burden of production shifted to Alvidrez, and she had failed to meet her burden of raising a triable issue. The court did not address Meredith's contention that Alvidrez's claims against her were barred by the statute of limitations of Code of Civil Procedure section 335.1. Judgment was entered, and Alvidrez timely appealed from it.

## DISCUSSION

### I. *Standard of Review*

We review orders granting summary judgment de novo. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.) Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the

6

moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

We consider all the evidence presented by the parties (except for evidence which the trial court properly excluded), liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.) We draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 843.) Although we cannot weigh the plaintiff's evidence and inferences from that evidence against those of the defendant, we "must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact." (*Id*. at p. 856, italics omitted.)

We may affirm summary judgment on any ground which appears in the record and which the opposing party had an adequate opportunity to address. (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 508-509.)

II. *Meredith's Separate Statement Supported the Motion for Summary Judgment*

Alvidrez argues Meredith did not meet her burden on a summary judgment motion because her separate statement of undisputed material facts failed to comply with the requirements of California Rules of Court, rule 3.1350 (d) and (h). Specifically, Alvidrez asserts that only two of the five issues (issues Nos. 1 & 5) in the separate statement "articulate a valid basis for potential adjudication," and issues Nos. 2, 3, and 4 are ambiguous and did not properly identify an issue for adjudication.

The trial court agreed that Meredith's separate statement did not comply with California Rules of Court, rule 3.1350 with respect to the alternate request for summary adjudication of issues. The court concluded, and we agree, the separate statement "adequately support[ed], in the aggregate, the motion for summary judgment." Meredith's separate statement is based on 13 undisputed material facts divided among five issue headings. If the issue headings were removed, the separate statement would comport with the format required by rule 3.1350 for a motion for summary judgment.

Further, "[t]he court's power to deny summary judgment on the basis of failure to comply with California Rules of Court, rule 3.1350 is discretionary, not mandatory." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118.) The trial court exercised its discretion to grant the motion for summary judgment notwithstanding defects in the separate statement and exercised its discretion to deny summary adjudication due to those defects in the separate statement. We find no abuse of discretion.

## III. *Under the Undisputed Facts, Alvidrez's Claims Are Time-barred*

Both of Alvidrez's causes of action against Meredith were subject to a two-year statute of limitations. (Code Civ. Proc., § 335.1.)[3] Those causes

___

[3] Meredith's causes of action against Lamberto are subject to Code of Civil Procedure section 340.3, subdivision (a), which states: "Unless a longer period is prescribed for a specific action, in any action for damages against a defendant based upon the defendant's commission of a felony offense for which the defendant has been convicted, the time for commencement of the action shall be within one year after judgment is pronounced."

Code of Civil Procedure section 335.1 was added by Statutes 2002, chapter 448, section 2, and became effective on January 1, 2003. (See

of action accrued on the date of injury, which was the date that Sommers was killed.  (*Kleefeld v. Superior Court* (1994) 25 Cal.App.4th 1680, 1684 ["The date of injury in a wrongful death cause of action is the date of death"].)[4]

Lamberto killed Sommers on March 31, 1994.  Alvidrez filed her complaint in October 2019.  Alvidrez's causes of action are therefore time-barred unless accrual is delayed or the statute of limitations is tolled.

Accrual of Alvidrez's causes of action is not delayed under the discovery rule.  Inasmuch as Sommers was a homicide victim, a reasonable person would suspect on the date he was killed his death was caused by wrongdoing.  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)

Failure to discover or have reason to discover the identity of the defendant does not delay accrual of the cause of action.  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399.)  Nevertheless, "a defendant may be equitably estopped from asserting the statute of limitations when, as a result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity."  (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 936.)  Under the doctrine of equitable estoppel, an action filed after the

---

Historical and Statutory Notes, 13B West's Ann. Code Civ. Proc. (2023 ed.) foll. § 335.1, p. 179.)  Before that date, wrongful death actions were subject to a one-year limitations period.  (Former Code Civ. Proc., § 340.)  When Alvidrez's cause of action accrued, it was subject to the one-year statute of limitations.  We use the two-year statute of limitations period because Meredith has never argued the shorter period applies to Alvidrez's wrongful death causes of actions.

[4] Meredith asserted the statute of limitations defense to the complaint and demurred to the first amended complaint on that ground.  When Meredith filed her motion for summary judgment, she had not yet answered the second amended complaint and was simultaneously bringing a demurrer.

limitations period has expired may proceed if "'the plaintiff is unaware of the identity of the wrongdoer and this is due to fraudulent concealment by the defendant.'" (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 690.)

Alvidrez alleged in her second amended complaint that Meredith helped Lamberto change his appearance to avoid detection, "hid her knowledge of the crime and involvement in the procurement of the handgun used in the crime," and failed to report the handgun as lost or missing.

With the motion for summary judgment, Meredith submitted a declaration from Lamberto in which he declared: (1) "About four days after March 31, 1994, I disposed of the gun I had used to shoot the two men by leaving it in a dumpster behind a store in Costa Mesa or Santa Ana"; (2) "I did not change my appearance after the killings by changing the style of my hair, the hats I wore, or otherwise," (3) "Meredith never did anything that assisted me to change my appearance, hair style, clothing or hats, or helped me to conceal or disguise my identity after the killings," (4) after killing Sommer, he and Meredith continued to live at the same home in Huntington Beach California until 1997 and, until 1999, he continued working as a teacher at the same school; and (5) "It is inaccurate to say that after the killings I stopped going for walks where the killings occurred or visiting Main Street in Huntington Beach because I generally did not go there before the killings."

Meredith also submitted excerpts from Lamberto's deposition transcript at which Lamberto testified he disposed of the gun by placing it in a dumpster, did not tell his wife about it, and "never spoke with her about anything that had to do with that." Lamberto testified that Meredith did not assist him in killing Sommer: She did not bring Lamberto the gun,

10

ammunition, or car keys, did not help him plan the killing, and did not assist him in changing his appearance.

Lamberto's declaration and deposition transcript excerpts satisfied Meredith's initial burden of production to make a prima facie showing of the nonexistence of a triable issue regarding concealment. (*Aguilar, supra*, 25 Cal.4th at p. 850.) The burden of production shifted to Alvidrez. (*Ibid.*) To meet that burden, Alvidrez submitted a declaration from her counsel, excerpts from Lamberto's deposition transcript, her initial complaint and second amended complaint, an objection to the notice of deposition of Meredith, a page from a police report, and the felony guilty plea form signed by Lamberto.

Counsel's declaration sought to relate information counsel had obtained from the criminal investigation of Sommer's murder. The trial court sustained Meredith's objections to those parts of counsel's declaration, and Alvidrez does not challenge that ruling. The initial complaint and second amended complaint are not evidence. In the excerpts from Lamberto's deposition transcript, Lamberto testified he told Meredith which gun to purchase, she purchased the gun and registered it in her name and gave him the gun as a birthday gift. He testified it was not possible that Meredith purchased the ammunition because "[s]he doesn't know anything about guns." He also testified that Meredith did not assist him in killing Sommer.

Meredith appeared at her deposition but asserted the spousal testimonial privilege and privilege against self-incrimination to nearly every question. Alvidrez never moved to compel Meredith to answer any questions. In civil proceedings, adverse inferences may not be drawn from the exercise of a privilege, including the Fifth Amendment privilege against self-

11

incrimination. (Evid. Code, § 913, subd. (a); *People v. Holloway* (2004) 33 Cal.4th 96, 131.)

In the police report dated May 11, 2017, it is reported that Meredith told a police investigator that on the date of the murder Lamberto's hair had been in a ponytail, but Lamberto shaved it off and became clean shaven. Meredith was reported to say that Lamberto had started to change his appearance and looked like "a shape-shifter, a 'Bob Dylan type'" and that "sometimes he would let his hair grow past his shoulders, and then he'd shave it all off [o]r he'd grow a beard and then shave that off too."

The police report, even if accepted as admissible evidence,[5] did not create a triable issue as to whether Lamberto and Meredith concealed their identities to avoid detection. Alvidrez presented no evidence to counter Lamberto's declaration that Meredith did not assist him in changing his appearance or to conceal his identity, that Lamberto disposed of the gun and never spoke to Meredith about it, that he and Meredith continued to reside in the same home for several years after the murders, that Lamberto continued in his position as a school teacher, or that he and Meredith did not change the places they frequented. Nor did Alvidrez produce evidence, such as her own declaration, to establish that her inability to identify the wrongdoers was *due to* fraudulent concealment by Lamberto or Meredith. Finally, Alvidrez filed her complaint more than two years after the May 2017 police report implicating Lamberto in killing Sommer.

---

[5] The contents of the police report, including statements made by Meredith, were inadmissible because they constituted double hearsay. (*Jane IL Doe v. Brightstar Residential Inc.* (2022) 76 Cal.App.5th 171, 178.) The trial court overruled Meredith's objection to the report, but she does not challenge the court's ruling.

12

## DISPOSITION

The judgment is affirmed.  Meredith is entitled to costs on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.